## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IN RE:

*EX PARTE* APPLICATION OF SPS CORP I – FUNDO DE INVESTIMENTO EM DIREITOS CREDITÓRIOS NÃO PADRONIZADOS FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782

Case No. 1:21-mc-00565-CFC

## RESPONDENT GENERAL MOTORS COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 <u>TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS</u>

Daniel A. Mason (#5206)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
500 Delaware Avenue, Suite 200
Wilmington, DE 19899-0032
(302) 655-4410 *phone*
Email:  dmason@paulweiss.com

Of Counsel:
Lewis R. Clayton
Darren W. Johnson
1285 Avenue of the Americas
New York, NY 10019-6064

*Counsel for Respondent*
*General Motors Company*

DATED:   March 28, 2022

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................1

FACTUAL BACKGROUND...................................................................................3

    A.    The Amount of Any Tax Credits Owed to the Applicant Is Still Subject to Ratification by the Brazilian Federal Revenue Office, and GM Brazil Has Committed to Pay That Amount Upon Ratification .......................4

    B.    Virtually Identical Document Requests Are  Currently Pending Before the Brazilian Court ...................................................................................7

ARGUMENT ........................................................................................................11

I.    THE APPLICATION FAILS TO SATISFY THE  SECTION 1782 STATUTORY REQUIREMENTS ...............................................................13

    A.    Applicant Seeks Information That Is Not "for Use" in a  Foreign Proceeding That Is within Reasonable Contemplation .......................13

    B.    The Application Is Improper Because It Seeks Discovery from  a Foreign Subsidiary Neither Residing in nor Found in Delaware..........18

II.    ALL OF THE *INTEL* FACTORS WEIGH AGAINST THE APPLICATION ...................................................................................................20

    A.    The Application Seeks Information That Is Already within  the Brazilian Court's Jurisdiction and Subject to Discovery  Requests That Are Pending Before the Brazilian Court ...............................21

    B.    Applicant's Conclusory Assertion That the Court Would Be Receptive to the Discovery Sought Here Is Pure Speculation ...............................23

    C.    The Application Seeks to Circumvent  Brazilian Proof-Gathering Restrictions........................................................................................24

    D.    The Requests Are Unduly Burdensome and Not Narrowly Tailored ...27

III.    THE APPLICATION ALSO SHOULD BE DENIED BECAUSE  IT DOES NOT COMPORT WITH THE FEDERAL RULES........................................31

CONCLUSION ....................................................................................................32

CERTIFICATE OF COMPLIANCE......................................................................34

CERTIFICATE OF SERVICE ..............................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bayer AG* v. *Betachem, Inc.*,
     173 F.3d 188 (3d Cir. 1999) .................................................................31

*Comision Ejecutiva Hidroelectrica del Rio Lempa* v. *Nejapa Power Co.
     LLC*,
     341 F. App'x 821 (3d Cir. 2009) ........................................................11

C*ottillion* v. *United Refining Co.*,
     781 F.3d 47 (3d Cir. 2015) .................................................................13

*In re Application of Godfrey*,
     526 F. Supp. 2d 417 (S.D.N.Y. 2007) ..............................................19

*In re Ex Parte Application of Qualcomm Inc.*,
     162 F. Supp. 3d 1029 (N.D. Cal. 2016)..............................................28

*In re Atvos Agroindustrial Investimentos S.A.*,
     481 F. Supp. 3d 166 (S.D.N.Y. 2020) ........................................25, 26

*In re Ex Parte Glob. Energy Horizons Corp.*,
     647 F. App'x 83 (3d Cir. 2016).........................................................21

*In re Fischer Advanced Composite Components AG*,
     No. C08-1512 (RSM), 2008 WL 5210839 (W.D. Wa. 2008) ......................30, 31

*In re Intel Corp. Microprocessor Antitr. Litig.*,
     2008 WL 4861544 (D. Del. Nov. 7, 2008)..................................17, 28

*Intel Corp.* v. *Advanced Micro Devices, Inc.*,
     542 U.S. 241 (2004).....................................................................*passim*

*Inv. Vehicles* v. *KPMG, LLP*,
     798 F.3d 113 (2d Cir. 2015) ........................................................13, 16

*In re IPC Do Nordeste, LTDA*,
     2012 WL 4448886 (E.D. Mich. Sept. 25, 2012) ....................25, 26, 30

*In re Kreke Immobilien KG,*
No. 13 Misc. 110 (NRB), 2013 WL 5966916 (S.D.N.Y. Nov. 8,
2013) ........................................................................22, 25, 28, 30, 32

*In re Microsoft Corp.,*
428 F. Supp. 2d 188 (S.D.N.Y. 2006) ...............................................21

*In re Sargeant,*
278 F. Supp. 3d 814 (S.D.N.Y. 2017) ...............................................16

*Fuhr* v. *Deutsche Bank, AG,*
615 F. App'x 699 (2d Cir. 2015) ......................................................22

*Kestrel Coal Pty. Ltd.* v. *Joy Global, Inc.,*
362 F.3d 401 (7th Cir. 2004) ............................................................19

*Kiobel by Samkalden* v. *Cravath, Swaine & Moore LLP,*
895 F.3d 238 (2d Cir. 2018) ........................................................11, 22

*Pinchuk* v. *Chemstar Prod. LLC,*
No. 13-MC-306-RGA, 2014 WL 2990416 (D. Del. June 26, 2014)............19, 23

*Salcido-Romo* v. *S. Copper Corp.,*
2016 WL 3213212 (D. Ariz. June 10, 2016) .....................................29

*Schmitz* v. *Bernstein Liebhard & Lifshitz, LLP,*
376 F.3d 79 (2d Cir. 2004) ...............................................................19

*Via Vadis Controlling GMBH* v. *Skype, Inc.,*
2013 WL 646236 (D. Del. Feb. 21, 2013).........................................26

## Statutes

28 U.S.C. § 1782 ...................................................................*passim*

## Other Authorities

Federal Rule of Civil Procedure 26 .........................................32

Federal Rule of Civil Procedure 45 .........................................31

Respondent General Motors Company ("GM") respectfully submits this opposition to the *ex parte* application (the "Application") by Applicant SPS Corp I – Fundo de Investimento em Direitos Creditórios Não Padronizados ("SPS" or "Applicant") for an order to conduct discovery pursuant to 28 U.S.C. § 1782.

## **PRELIMINARY STATEMENT**

This Application—which duplicates discovery requests Applicant is seeking in a fully briefed application now awaiting decision in a Brazilian court—is a transparent, improper attempt to circumvent Brazilian litigation procedures.  The Application fails to satisfy threshold requirements of Section 1782 and should be denied under the discretionary factors set out in *Intel Corp.* v. *Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).

Applicant claims it needs the requested discovery to "succeed in pending and contemplated Brazilian legal proceedings against GM's wholly owned subsidiary, General Motors do Brasil LTDA. ('GM Brazil'), for monies that GM Brazil owes the Applicant in connection with a three-decade-long tax dispute between GM Brazil and the Brazilian federal government for tax credits paid by several GM car dealerships in Brazil."  (D.I. 2 at 1.)  But the *ex parte* Application fails to disclose essential facts that belie that claim, including that:

(i)     the discovery Applicant seeks here—indeed, all of the discovery possibly relevant to Applicant's potential claims—may be obtained

from GM Brazil and Applicant is now seeking that same material in a Brazilian court;

(ii)    GM Brazil has committed to pay Applicant (and other dealers) the tax credits once the amount owed is finally ratified by Brazilian government authorities;

(iii)    GM Brazil has already given Applicant the information necessary to determine the amount owed once those credits are finally ratified; and

(iv)    Brazilian courts have repeatedly ruled that dealers may not bring suit to recover the credits until such ratification occurs.

On this record, the Applicant fails to satisfy two fundamental statutory prerequisites.  Applicant fails to demonstrate, as Section 1782 requires, that the information it seeks is "for use" in a foreign proceeding that is within reasonable contemplation.  Indeed, any claim Applicant may have against GM Brazil at some point in the future is purely theoretical.  Nor can Applicant satisfy the statutory requirement that the target of the discovery "resides or is found" in this District. The true target of Applicant's requests is GM Brazil, a foreign subsidiary that does not reside in, and is not found in, this District, and from which Applicant is currently seeking the very same discovery in Brazil.  Significantly, Applicant makes no attempt to show that GM has any relevant evidence that is not also available in Brazil.  To the contrary, Applicant admits that "*all* financial information concerning

2

the IPI tax refunds or credits is *solely* in the possession of GM Brazil and its financial professionals."  (D.I. 2 at 4 (emphases added).)  Federal courts have repeatedly rejected Section 1782 applications designed to force the American parent corporation of a participant in a foreign proceeding to produce information in the custody of its foreign subsidiary.

The Application also should be denied as a matter of discretion under the *Intel* factors:  *First*, the information Applicant seeks is already within the reach of the Brazilian court and subject to discovery requests that currently are under consideration by a Brazilian judge.  *Second*, because a contested request for the same discovery is pending in the Brazilian court, Applicant's suggestion that the Brazilian court would be receptive to the discovery sought in this Application is pure speculation.  *Third*, Applicant seeks to circumvent Brazilian proof-gathering restrictions, which limit prelitigation discovery.  *Fourth*, the requests are unduly burdensome and far overbroad, seeking documents dating back several decades, many of which have no bearing on the amount of any Brazilian tax credits Applicant may be owed.  For the same reasons, the requests should be denied under federal discovery rules, which apply to Section 1782 applications.

## FACTUAL BACKGROUND

The facts described below are set forth more fully in the Declaration of Lucas Simão (the "Simão Decl.") filed herewith.

**A.    The Amount of Any Tax Credits Owed to the Applicant Is Still Subject to Ratification by the Brazilian Federal Revenue Office, and GM Brazil Has Committed to Pay That Amount Upon Ratification**

SPS's Application relates to payments of the Imposto sobre Produtos Industrializados ("IPI"), a Brazilian federal tax, made over 30 years ago by GM Brazil.  As an automobile manufacturer, GM Brazil pays the IPI, which it then passes on to individual car dealerships.  In 1989, the price used to calculate the tax was changed from the sticker price to the actual price dealers were charged.  GM Brazil nevertheless paid tax based on the higher sticker price from June 1, 1990 to July 31, 1991.  (Simão Decl. ¶ 6.)

Beginning in 1995, GM Brazil, with the authorization of its dealerships (including the dealers who later assigned their rights to Applicant), sued the Brazilian federal government to recover the overpayments.  That action continued until 2017, when Brazil's highest court recognized GM Brazil's right to the return of the overpayments plus interest.  Under Brazilian law, after obtaining such a decision, the taxpayer must file a proof of claim with the Brazilian Federal Revenue Office (the Receita Federal do Brasil, or "RFB"), Brazil's equivalent of the IRS, or initiate a liquidation proceeding before the courts.  GM Brazil accordingly decided to file a proof of claim with the RFB and retained an independent auditor, KPMG, to calculate and validate the total tax credit, as well as the specific credit owed each dealership.  On July 30, 2019, GM Brazil submitted its proof of claim, including a detailed spreadsheet prepared by KPMG.  (*Id.* ¶ 7.)

Contrary to Applicant's false claim that GM Brazil "has steadfastly refused to provide any relevant information to the Applicant, despite repeated requests" (D.I. 2 at 12), GM Brazil in fact provided the KPMG spreadsheet to Applicant.  GM Brazil also gave Applicant copies of the papers submitted in the underlying proceedings filed against the Brazilian government relating to the IPI tax payments.  These materials are more than sufficient to allow Applicant to determine the amount of the credits at issue.  (Simão Decl. ¶ 8.)

After receiving a proof of claim request, the RFB has at least five years to examine the existence and sufficiency of the tax credit amount claimed.  Only when the RFB has done so and ratified the amount claimed, is the amount of the credit final.  Thus, GM Brazil's duty to transfer the tax credits to the dealerships does not arise unless and until (i) the RFB ratifies the amount in the proof of claim, or (ii) the five-year examination period expires.  (*Id.* ¶ 9.)

While the Application creates the misleading impression that Applicant has a current right to payment (*see, e.g.,* D.I. 2 at 11-12), in fact, neither event has occurred.  The RFB has not yet ratified the proof of claim request, and the five-year period does not expire until, at least, July 30, 2024.  Thus, the amount of any tax credits owed to Applicant, as the assignee of the rights of certain former dealerships, is not yet final and payable.  Only after that amount is ratified by the RFB (or after the 5-year examination period expires) will GM Brazil be obligated to pay

Applicant.  And only if GM Brazil fails to do so at that time will Applicant have standing to bring a lawsuit to collect those credits.  (*Id.* ¶ 10.)

As Applicant is aware, this precise issue has been litigated and conclusively decided in the Brazilian courts, where certain dealerships have filed four unsuccessful lawsuits seeking to shortcut the RFB ratification process and collect the credit amounts now.  In each of those lawsuits, the court has rejected the dealerships' claims as premature.  For example, in a March 10, 2020 decision in Proceedings No. 1009627-38.2018.8.26.0565, 1st Lower Civil Court of São Caetano do Sul, Judge Érika Ricci, the court unequivocally ruled that:

> [I]t is necessary to wait for the Federal Revenue Office [RFB] to determine the amount to be reimbursed, so that only then may the plaintiffs judicially claim the amount due to them, if the automaker [GM Brazil] does not pass on the credit or if the dealerships disagree with the value offered to them.  It is important to emphasize that the plaintiffs have a mere expectation of right as a result of the favorable sentence to the defendant against the National Treasury, and there is no reason to speak, for now, of a jurisdictional provision capable of satisfying it.

(*Id.* ¶ 11 and Ex. A.)  This decision is final and unappealable.  In other words, the dealerships (and Applicant as an assignee) have nothing more than "a mere expectation of right," and will not have an actionable claim unless and until (i) the RFB ratifies the credit amount (or the 5-year examination period expires), and (ii) GM Brazil thereafter does not pay the credit amount to the dealerships (and Applicant).  (*Id.*)

Similarly, in an August 25, 2020 appellate decision of the 28th Private Law Chamber of Court of Justice of São Paulo, Reporting Court Justice Celso Pimentel, Appeal No. 1009226-39.2018.8.26.0565, the court ruled that a dealership "indeed does not have an interest in acting in the intended declaration of the updated value of the IPI credit," that its attempt to "shortcut" the ratification process by means of a lawsuit was improper, and that until the ratification process is complete, the dealership has "a mere expectation of right, which will only materialize after the determination of the tax credit for offsetting." (*Id.* ¶ 12 and Ex. B (internal quotation marks omitted).)  This decision is also final and unappealable.

To be clear, and contrary to the false suggestion otherwise in Applicant's papers:  GM Brazil is not refusing, and has never refused, to pay dealerships and Applicant once amounts are final and payable.  GM Brazil has committed to make payments upon ratification or expiration of the five-year period.  Therefore, Applicant's "mere expectation of right" will never give rise to an actionable legal claim.  (*Id.* ¶ 13.)

## B.   Virtually Identical Document Requests Are Currently Pending Before the Brazilian Court

In a transparent effort to evade those court rulings, SPS, rather than filing a meritless lawsuit to collect tax credits it is not yet owed, has instead filed an action in Brazil seeking the production of evidence and documents.  The discovery SPS seeks in Brazil—which is virtually identical to what it seeks here—includes:

7

(i) Copies of all documents pertaining to the collections made by GM Brazil of IPI taxes on unconditional discounts on sales made to the dealers between June 1, 1990 and July 31, 1991.

(ii) A list and copies of all invoices issued against the assigning dealers in the period in question in the IPI tax actions filed by GM Brazil.

(iii) A list, dealer by dealer, of invoices and/or proof of payment of the IPI that may not be located by GM Brazil.

(iv) All documents relating to the calculation of the IPI tax credit (spreadsheets, reports, forms, reports, etc.).

(v) Accounting records pertaining to the calculation and use of the IPI tax credit, including, but not limited to, the IPI calculation book, ledger book, balance sheets, income statements, and other accounting and financial information.

(vi) Information on the accounting recognition of the IPI tax credit in equity assets, with copies of all corresponding documents.

(vii) Petitions for restitution, for transfer of claims to third parties, or petitions for compensation of IPI Rabo tax credits, at any time; Declaration of Federal Tax Credits and Debts (DCTF).

(viii) Reports and related documents annually issued by the independent auditors to GM Brazil, as well as any communications exchanged on the matter and other working materials.

(ix) Full copies of petitions, requests and administrative processes pertinent to the IPI tax, including, but not limited to, administrative process No. 13820.720316/2019-28, with an indication of the status and information on claims for qualification or use for any form of credit tax in question.

(x) Other potential documents or information related to the recognition of the IPI tax credit.

(xi) Documents on transfers that GM Brazil has made to the dealers or assignees of concessionaire rights due to receipt or use by any means of the IPI tax credits.

8

(*Id.* ¶ 15.)  This same set of requests (with minor translation differences) is set forth in the Declaration of Bruno Pedreira Poppa, submitted in support of the Application. (*See* Poppa Decl. ¶ 31.)  Notably, however, Mr. Poppa's declaration omits Request (x) above (the numbering is out of order in Mr. Poppa's declaration, causing the missing request number to be (vii) in his list).  This omission is particularly significant given that the scope of Request (x) is so broad as to encompass virtually every document that Applicant is seeking in its proposed subpoena in this Court. (Simão Decl. ¶ 16.)

In addition to the all-encompassing scope of Request (x), many of the other requests in the Brazilian proceeding directly overlap with the documents sought here.  For example, the Brazilian requests and the proposed subpoena here both seek:

- All documents concerning IPI payments made by GM Brazil between June 1, 1990, and July 31, 1991 (*compare* Brazilian Request No. (i) *with* Subpoena Request No. 4);

- Invoices related to those payments (*compare* Brazilian Request No. (ii) *with* Subpoena Request No. 4);

- Detailed lists of the dealerships that overpaid the IPI during that period (*compare* Brazilian Request No. (iii) *with* Subpoena Request No. 4);

- All documents concerning IPI tax payments and associated tax credits, including accounting records (*compare* Brazilian Request Nos. (iv-vi) *with* Subpoena Request Nos. 3, 5-8);

- Audit reports and related documents issued annually by the independent auditors of GM Brazil (*compare* Brazilian Request No. (viii) *with* Subpoena Request No. 10);

9

- Copies of filings, requests, lawsuits, and administrative proceedings concerning the IPI tax payments (*compare* Brazilian Request No. (ix) *with* Subpoena Request No. 11); and

- Documents concerning transfers that GM Brazil has made to car dealerships or their assignees regarding IPI tax credits (*compare* Brazilian Request No. (xi) *with* Subpoena Request Nos. 12-13).

As a result of these directly overlapping requests, in combination with the broad scope of Brazilian Request No. (x) ("Other potential documents or information related to the recognition of the IPI tax credit"), Applicant is seeking virtually identical discovery from GM Brazil in its Brazilian action as it is seeking simultaneously in this Court.  (*Id.* ¶ 18.)

The Application misleadingly suggests that GM Brazil failed to comply with a Brazilian court order to produce the requested discovery, resulting in sanctions. (D.I. 2 at 13.)  That is not correct.  In fact, GM Brazil was not properly served, and GM Brazil did not have proper notice of the proceeding and the evidence requested until after the Brazilian court entered its order on June 28, 2021.  GM Brazil thereafter promptly filed an opposition, noting the failure to properly serve GM Brazil, and explaining why the discovery sought is unwarranted, including because SPS does not have legal standing to seek such evidence at this time.  Applicant suggests that GM Brazil was "bar[r]ed" from filing such an opposition, but in fact the Brazilian court accepted GM Brazil's opposition, and ordered SPS to file a response thereto.  (*Id.* ¶ 19.)  As part of that briefing, in a submission it filed in February 2022, SPS sought to expand its application in order to serve discovery

10

requests on Deloitte and Ernst & Young entities in Brazil.  (*Id.*)  SPS's application, and GM Brazil's opposition thereto, is now fully briefed and the issues of the relevance and discoverability of the information Applicant seeks is now *sub judice* in the Brazilian court.  (*Id.*)

Significantly, neither in the Brazilian action nor here has Applicant identified any potentially relevant information that is available only from GM, and not obtainable from GM Brazil.  To the contrary, the supporting declaration of Mr. Poppa acknowledges that the information Applicant seeks "can *only* be provided by [GM Brazil] itself or by its auditors" (Poppa Decl. ¶ 5 (emphasis added)), the very parties Applicant is seeking evidence from in Brazil.  (Simão Decl. ¶ 20.)  As Applicant's Memorandum puts it:  "*all* financial information concerning the IPI tax refunds or credits is *solely* in the possession of GM Brazil and its financial professionals."  (D.I. 2 at 4 (emphases added).)

## ARGUMENT

Section 1782 "authorizes, but does not require," that district courts provide judicial assistance for use in foreign proceedings.  *See Intel*, 542 U.S. at 255; *see also Kiobel by Samkalden* v. *Cravath, Swaine & Moore LLP*, 895 F.3d 238, 242 (2d Cir. 2018) ("Section 1782 states that a court 'may order' such discovery; so even if a court has jurisdiction under the statute to grant a petition, the decision to grant it is discretionary."); *Comision Ejecutiva Hidroelectrica del Rio Lempa* v. *Nejapa Power Co. LLC*, 341 F. App'x 821, 828 (3d Cir. 2009) ("[A] district court is not required to

grant a § 1782(a) discovery application simply because it has the authority to do so." (citing *Intel*, 542 U.S. at 264)).

A district court may grant an application under Section 1782 where: (1) the person from whom discovery is sought resides or is found in the district, (2) the discovery is for use in a proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person. *See* 28 U.S.C. § 1782.

If these statutory prerequisites are met, a court must decide whether to exercise its discretion to grant the application. The Supreme Court has identified four factors to guide the court's discretion: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case, "the need for § 1782(a) aid generally is not as apparent;" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) whether the Section 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65. Finally, a Section 1782 application is subject to the same discovery limits imposed by the Federal Rules of Civil Procedure.

12

Because the Application fails to meet the statutory requirements, the discretionary factors weigh heavily against granting it, and the proposed subpoena does not comport with the Federal Rules, the Application should be denied in its entirety.

## I.   THE APPLICATION FAILS TO SATISFY THE SECTION 1782 STATUTORY REQUIREMENTS

The Application does not—and cannot—satisfy two threshold statutory requirements.  First, Applicant fails to show that the requested information is "for use" in a foreign proceeding that is within reasonable contemplation.  Second, the true target of the Application is a foreign subsidiary—GM Brazil—that does not reside in, and is not found in, this District.  And having failed to carry this burden in the Application, Applicant may not make new *post hoc* arguments in its reply.  *See, e.g.*, C*ottillion* v. *United Refining Co.*, 781 F.3d 47, 61 (3d Cir. 2015).

### A.   Applicant Seeks Information That Is Not "for Use" in a Foreign Proceeding That Is within Reasonable Contemplation

Section 1782 does not permit a foreign party to employ the power of a United States court to impose discovery obligations on a non-party on the mere say-so that the evidence it seeks is relevant and would be "for use" in a foreign proceeding.  Instead, "the burden [is] on a § 1782 applicant to establish that it will have some means of actually using the evidence in the foreign proceeding." *Certain Funds, Accounts and/or Inv. Vehicles* v. *KPMG, LLP*, 798 F.3d 113, 122 n.11 (2d Cir. 2015).  It is not sufficient for Applicant simply to assert that the requested

information is relevant.  "[B]y adopting the phrase 'for use,' Congress plainly meant to require that § 1782 applicants show that the evidence sought is 'something that will be employed with some advantage or serve some use in the proceeding.'" *Id.* at 120.  Moreover, the foreign proceeding in which the information will be used must be "within reasonable contemplation." *Intel*, 542 U.S. at 259.

Here, Applicant does not come close to meeting those standards.  Tellingly, although its brief includes a section entitled "The Discovery is 'For Use' in the Brazilian Proceedings," it carefully avoids explaining—even in conclusory terms— how it intends to use the discovery it is seeking, or even how that discovery would be relevant to such a proceeding.

Indeed, Applicant offers only a single sentence to support its claim that it seeks discovery for use in a foreign proceeding.  (Poppa Decl. ¶ 40.)  That sentence simply asserts—without any explanation or support—that "[t]he evidence that SPS seeks in the jurisdiction will be essential for SPS to assess its claim or indemnity against [GM Brazil] and ultimately to file its claim (the contemplated proceeding) in Brazil against [GM Brazil]."  (*Id.*)  That assertion is pure *ipse dixit*.

Applicant uses this evasion presumably to mask the fact that it lacks standing to bring a claim in Brazil because the tax credits have not yet been ratified by the RFB.  Nor is there any basis for Applicant to have standing in the future because GM Brazil is not refusing, and never has refused, to allocate those credits—once

14

approved by the RFB—to the dealerships, including the former dealerships who assigned their rights to Applicant.  Given these facts, which are omitted from its Application, Applicant cannot show that the discovery it seeks is "for use" in a Brazilian legal proceeding "within reasonable contemplation."

Applicant also omits that it already *has* the information it needs to determine the amounts of the credits.  Indeed, it has the very same spreadsheet, prepared by KPMG, that was submitted to the RFB.  (Simão Decl. ¶ 8.)  It also has full copies of petitions, requests and administrative proceedings concerning the tax payments and any associated tax credits, including the proceedings between GM Brazil and the Brazilian federal government that are referenced in the Application.  (*Id.*)  GM Brazil provided these materials to Applicant in response to discovery requests in the Brazilian proceeding.  Thus, Applicant's claim that GM Brazil has "not complied" with Applicant's requests in the Brazilian proceeding (D.I. 2 at 13) is untrue.

Moreover, by asserting that the information it seeks "will be essential for SPS to assess its claim or indemnity against [GM Brazil]," Applicant effectively is acknowledging that it needs the requested discovery to "assess" whether it even has grounds to file a lawsuit.  (Poppa Decl. ¶ 40.)  That, too, is not an appropriate use of Section 1782.  "Courts must guard . . . against the potential that parties may use § 1782 to investigate whether litigation is possible in the first place, putting the cart before the horse.  The latter situation is not an appropriate one for a court to compel

15

discovery." *In re Certain Funds, Accounts, and/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Group LLC*, No. 14-cv-1801 (NRB), 2014 WL 3404955, at *6 (S.D.N.Y. July 9, 2014).

While "[s]uch information might be relevant or interesting to" Applicant, "it is not 'for use' in any proceeding in which the recipient is a party." *Certain Funds*, 798 F.3d at 121. Instead, Applicant merely seeks to require GM to "furnish information in the hope that it might be used." *Id.* (affirming denial of Section 1782 application where at the time of the application Applicants "were discussing the possibility of initiating litigation" and "had done little to make an objective showing that the planned proceedings were within reasonable contemplation"); *see also In re Sargeant*, 278 F. Supp. 3d 814, 823 (S.D.N.Y. 2017) (denying Section 1782 application where "[t]he assertion that [Applicant] plans to use the evidence he seeks to assess whether to initiate actions in [foreign courts] underscores the 'mere[ ] speculative[ness]' of the contemplated proceedings, and is plainly insufficient to provide this Court with 'some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye'" (quoting *Certain Funds*, 798 F.3d at 124)). That is all the more true here, where Brazilian courts have repeatedly held that Applicant has no present right to bring suit.

The remarkable overbreadth of Applicant's proposed subpoena further belies any claim that the requested discovery is for use even in some hypothetical future

lawsuit against GM Brazil in Brazil.  For example, the subpoena makes an extraordinarily broad request for "[a]ll documents and communications concerning audit reports and related documents issued annually by the independent auditors of General Motors Co." for a period of more than 30 years.  (Request No. 10)  The subpoena also seeks copies of *all* "financial statements and audit reports of General Motors Company from June 1st, 1990 through the date of this Application." (Request No. 1)  And the subpoena seeks deposition testimony on these same topics for the same 30+ year time period.  Applicant makes no effort to demonstrate how any of this information "will be employed with some advantage" in—or is even relevant to—any potential future lawsuit it may have against GM Brazil in Brazil concerning Brazilian tax payments and credits.

The decision in *In re Intel Corp. Microprocessor Antitr. Litig.*, 2008 WL 4861544 (D. Del. Nov. 7, 2008), is particularly instructive.  In that case, as here, applicant did not currently have standing to bring suit in a foreign court, and would only be able to do so if and when certain events occur.  The court ruled that such a hypothetical action was "too speculative, and too remote and not 'within reasonable contemplation,'" and thus denied the Section 1782 application because it failed to satisfy the statutory requirements.  *Id.* at *18.  This application is no different and should be denied for the same reasons.

**B.      The Application Is Improper Because It Seeks Discovery from
a Foreign Subsidiary Neither Residing in nor Found in Delaware**

Applicant also cannot satisfy the statutory requirement that the discovery

target "resides or is found" in this District.  28 U.S.C. § 1782(a).  Applicant

demands information not only from GM but also from its "affiliates" and/or

"subsidiaries," including GM Brazil (*see* D.I. 2-1, Ex. A (defining "General Motors

Company")), which Applicant concedes is a wholly owned subsidiary of GM that is

found in Brazil, not in Delaware. (*see* D.I. 2 at 1, 6.)  Most significantly, Applicant

expressly acknowledges that the goal of the Application is to get information from

GM Brazil, and it identifies no conceivably relevant information that is located only

in the United States.

Applicant's Memorandum emphasizes that "all financial information

concerning the IPI tax refunds or credits is solely in the possession of GM Brazil

and its financial professionals."  (D.I. 2 at 4.)  And the Poppa Declaration asserts

that the information Applicant seeks "can only be provided by [GM Brazil] itself or

by its auditors."  (Poppa Decl. ¶ 5.)  In fact, the vast majority of the document

requests and deposition topics in the subpoena expressly seek documents and

testimony that could *only* come from GM Brazil.   (*See*, *e.g., id.* at Doc. Req. Nos. 2-

13 and Dep. Topic Nos. 2-11.)  Accordingly, Applicant is seeking evidence beyond

the jurisdictional reach of this Court—which is limited to entities and documents

found in this District.

Federal courts have refused to allow foreign litigants to use Section 1782 to compel U.S. parent companies to produce information that can be obtained from foreign subsidiaries that are parties in the foreign proceeding. *See Kestrel Coal Pty. Ltd.* v. *Joy Global, Inc.*, 362 F.3d 401, 405 (7th Cir. 2004) (reversing a district court's decision ordering a domestic entity to produce documents belonging to a foreign subsidiary and finding that "Section 1782(a) itself neither instructs, nor permits, courts to disregard the distinction between the corporation that owns a set of documents, and a different corporation that owns stock in the first entity," and that the distinction should be enforced because Applicant "does not contend . . . that the requirements for piercing the corporate veil under Delaware law have been met" (internal citations omitted)); *see also Schmitz* v. *Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004) (affirming denial of Section 1782 application and observing that "[a]lthough technically the respondent in the district court was Cravath, for all intents and purposes Applicants are seeking discovery from DT, their opponent in the German litigation"); *Pinchuk* v. *Chemstar Prod. LLC*, No. 13-MC-306-RGA, 2014 WL 2990416 (D. Del. June 26, 2014) (finding that "the location of the remaining documents [sought through a Section 1782 application] . . . tilt the overall balance towards quashing the discovery requests for the unproduced documents located abroad."); *In re Application of Godfrey*, 526 F. Supp. 2d 417, 424 (S.D.N.Y. 2007) ("[T]here is no reason to conclude that *Intel* stands for the

proposition that § 1782 may be used to compel discovery of documents located abroad for use in foreign judicial proceedings.").

The strict enforcement of this statutory prerequisite is vitally important, because otherwise a foreign litigant could subvert the discovery rules of foreign tribunals simply by filing a Section 1782 action against an American multinational.

The same reasoning also supports the denial of Applicant's 30(b)(6) deposition subpoena. Because all of the relevant information concerning the Brazilian tax payments and any associated tax credits resides in Brazil, with GM Brazil, there is no ground for deposition testimony from a U.S. witness as sought in Applicant's proposed 30(b)(6) subpoena.

For these reasons, Applicant has not satisfied, and cannot as a matter of law satisfy, the required elements necessary to be granted discovery pursuant to Section 1782.

## II.     ALL OF THE *INTEL* FACTORS WEIGH AGAINST THE APPLICATION

Because Applicant has not satisfied the statutory prerequisites under Section 1782, we submit that this Court need not engage in further analysis. But the Application also should be denied as a matter of discretion because all of the *Intel* factors weigh heavily against Applicant. *First*, the information sought is already within the reach of the Brazilian court and subject to discovery requests currently pending there. *Second*, because a request for the very same discovery is pending in

20

Brazil, Applicant's conclusory assertion that the Brazilian court would be receptive to the discovery sought in this Court is pure speculation, and this Court should not try to predict or second-guess the Brazilian court's forthcoming ruling. *Third*, Applicant is abusing Section 1782 to circumvent Brazilian proof-gathering restrictions. *Fourth*, the discovery Applicant seeks is unduly burdensome and not narrowly tailored.

### A.   The Application Seeks Information That Is Already within the Brazilian Court's Jurisdiction and Subject to Discovery Requests That Are Pending Before the Brazilian Court

As Applicant acknowledges (D.I. 2 at 21-22), the first *Intel* factor concerns "whether the discovery sought is within the foreign tribunal's jurisdictional reach, and therefore accessible without seeking the aid of § 1782." *In re Ex Parte Glob. Energy Horizons Corp.*, 647 F. App'x 83, 85 (3d Cir. 2016). Here, as noted above, Applicant has conceded that the discovery it seeks—indeed, all the possibly relevant discovery—is available in Brazil. Attempting to avoid this analysis, Applicant simply asserts that the first *Intel* factor weighs in its favor because GM "is not a participant in the foreign proceeding" and is "beyond the foreign court's subpoena powers." (D.I. 2 at 21-22.) That is not the correct standard. Even if the targets of a Section 1782 application "are not 'participants,' per se, in the underlying [foreign] proceeding," so long as "the evidence is available to the foreign tribunal," assistance under Section 1782 "is both unnecessary and improper." *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006); *see also In re OOO Promnefstroy*, Misc. No.

M 19-99 (RJS), 2009 WL 3335608, at *5 (S.D.N.Y. Oct. 15, 2009) ("[I]t is the foreign tribunal's ability to control the evidence and order production, not the nominal target of the § 1782 application, on which the district court should focus.").

As discussed above, courts therefore routinely find that discovery from a corporate parent of a participant in the foreign proceeding is effectively an improper attempt to take discovery of the participant. *See, e.g., Fuhr* v. *Deutsche Bank, AG*, 615 F. App'x 699, 700 (2d Cir. 2015) ("We find no error with the district court's conclusion that while the Section 1782 petition names Deutsche Bank AG as respondent, Fuhr actually seeks information from Deutsche Bank (Suisse)."); *In re Kreke Immobilien KG*, No. 13 Misc. 110 (NRB), 2013 WL 5966916, at *5 (S.D.N.Y. Nov. 8, 2013) ("To the extent that the Applicant seeks documents from [subsidiary]—and is only doing so through [parent] because [subsidiary] is now its wholly-owned subsidiary—discovery is fundamentally being sought from a participant in the German proceeding.").

Applicant's attempt to sidestep the Brazilian court's jurisdiction is even more striking here, where the discovery sought not only is available in Brazil, but a request for the same discovery is presently pending before a Brazilian court. Therefore, the first *Intel* factor weighs heavily against granting the Application. *See, e.g.*, *Kiobel by Samkalden* v. *Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018) ("[W]hen the real party from whom documents are sought" is

22

"involved in [the] foreign proceedings, the first *Intel* factor counsels against granting a Section 1782 petition."); *Pinchuk*, 2014 WL 2990416, at *4 (denying Section 1782 application because "the location of the documents," among other things, "tilt[s] the overall balance towards quashing the discovery requests for the . . . documents located abroad"); *Promnefstroy*, 2009 WL 3335608, at *7 ("Because the Court concludes that nearly all of the documents that the subpoena seeks are also in the possession of parties to the foreign proceeding, the first factor weighs squarely in favor of [respondent].").

## B. Applicant's Conclusory Assertion That the Court Would Be Receptive to the Discovery Sought Here Is Pure Speculation

For similar reasons, the Application also fails the second *Intel* factor, which asks this Court to consider the nature of the foreign tribunal and the character of the foreign proceedings, as well as the receptivity of the foreign judiciary to U.S. federal court assistance. *See Intel*, 542 U.S. at 264–65. Applicant's analysis of this factor is limited to whether there is any prohibition on Brazilian courts accepting evidence collected pursuant to a Section 1782 proceeding. But that myopic focus entirely disregards the current status and "character of the foreign proceedings." *Id.* Until the Brazilian court decides whether the discovery SPS seeks is appropriate, any assertion that the Brazilian court would be receptive to the discovery sought here is pure speculation.

Ignoring these issues, Applicant simply cites two cases in which Section 1782 applications were granted for proceedings in Brazil.  (*See* D.I. 2 at 23.)  But those decisions granted applications with either perfunctory or no discussion of Brazil's receptivity.  More importantly, those cases did not involve circumstances where the very same discovery requests were simultaneously pending before the Brazilian court.  Indeed, it is telling that nowhere does Applicant cite *any* decision granting a Section 1782 discovery request directed to a parent corporation when Applicant was seeking the same discovery from a subsidiary in the foreign proceeding— particularly where (as here) the sole objective of the foreign proceeding is to obtain that discovery.  Applicant does not do so because the relief that Applicant seeks here is extraordinary, and far exceeds what is permissible under Section 1782.

### C.   The Application Seeks to Circumvent Brazilian Proof-Gathering Restrictions

The third *Intel* factor cautions courts against granting a Section 1782 application that "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country."  *Intel*, 542 U.S. at 264–65.  This Application is clearly a substitute for the Brazilian discovery proceedings—an improper attempt to compel GM Brazil to produce material that would not be required by the Brazilian court.  Applicant knows that all the possibly relevant materials are available from GM Brazil, and asserts that an order from this Court compelling discovery "will put an end to the Brazilian Proceeding."  (D.I. 2 at 14.)

24

On this record, the Application is plainly an impermissible attempt to duck Brazilian proof-gathering restrictions.  "[R]ational actors do not needlessly increase their own litigation costs, [so] there must be a reason that [Applicant] is seeking the information here [and also] in Brazil."  *In re IPC Do Nordeste, LTDA*, 2012 WL 4448886, at *7 (E.D. Mich. Sept. 25, 2012).  The reason is clear:  "the opportunity to obtain pretrial discovery in Brazil is limited."  *In re Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166, 177 (S.D.N.Y. 2020).

Indeed, as explained in the Declaration of Lucas Simão submitted herewith, the Brazilian Code sets strict limitations on discovery.  Article 397 of the Brazilian Code requires that any request for prelitigation documents must include (1) "the characterization, as complete as possible, of the document or thing;" (2) "the purpose of the evidence, pointing to the facts that are related to the document or thing;" and (3) "the circumstances upon which the applicant bases his or her affirmation that the document or thing exists and is in the possession of the adverse party."  (Simão Decl. ¶ 14 (quoting Article 397 of the Código de Processo Civil (CPC).))

"Because the locus of this action is so clearly in [Brazil]" and the true parties from whom discovery is sought are parties to the very proceedings for which the discovery is sought, the Application can only be interpreted as an impermissible "attempt to circumvent [Brazil's strict] discovery procedures."  *Kreke*, 2013 WL

25

5966916, at \*6; *see also In re Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d at 177 (finding that when applicant "made the tactical decision to seek discovery from its opponent (and its affiliates)" in the U.S. due to the limited ability to engage in pretrial discovery in Brazil, applicant evinced an attempt to make an "end-run around [Brazil's] proof gathering restrictions").

As the third *Intel* factor recognizes, granting an application under these circumstances "would create a perverse system of incentives—one counter to the efficiency and comity goals of § 1782—[that] encourage[s] foreign litigants to scurry to U.S. courts to preempt discovery decisions from tribunals with clear jurisdictional authority." *Id.*; *see also Via Vadis Controlling GMBH* v. *Skype, Inc.*, 2013 WL 646236, at \*2 (D. Del. Feb. 21, 2013) (finding that where, as here, the foreign court has the authority to order the requested discovery, "[d]iscovery under § 1782 would be, in essence, a circumvention of the foreign courts' rules and enforcement procedures").

The third *Intel* factor thus weighs strongly against granting the Application. *See IPC Do Nordeste*, 2012 WL 4448886, at \*7 (weighing third *Intel* factor against applicant where, as here, the "reasonable explanation" for applicant seeking discovery in the United States was that applicant was "attempting to circumvent proof-gathering restrictions of the Brazilian court").

26

**D.**     **The Requests Are Unduly Burdensome and Not Narrowly Tailored**

The final *Intel* factor evaluates whether the Application contains "unduly intrusive or burdensome requests." *Intel*, 542 U.S. at 265.  Here, contrary to Applicant's claim that the discovery it seeks is "narrowly tailored" (D.I. 2 at 25), the subpoena Applicant seeks to enforce—which contains 13 document requests and 13 30(b)(6) deposition topics spanning more than 30 years of financial records and communications, many of which have no possible bearing on the Brazilian tax questions at issue—is in fact unduly burdensome and far from narrowly tailored.

As discussed above, and in the Declaration of Lucas Simão submitted herewith, Applicant fails to disclose to this Court that GM Brazil already has provided Applicant with the information it needs to evaluate the Brazilian tax payments and any associated tax credits, including (1) the KPMG spreadsheet identifying the specific tax credits sought with respect to each and every GM dealership in Brazil, including those who assigned their rights to SPS, and (2) a full set of the papers filed in the underlying proceedings brought by GM Brazil against the Brazilian federal government relating to the tax payments and any associated tax credits.  Applicant makes no attempt to explain why this information is insufficient for evaluating and determining what if any tax credit it will be owed.  Its failure to do so is sufficient grounds for denying the Application.

Notwithstanding that it already has the information it needs, Applicant is asking this Court to force GM to look for decades-old documents, including

27

documents that have no possible bearing on the Brazilian tax credit issue.  For example, Applicant is seeking 30+ years of financial statements and audit reports for GM and GM Brazil, regardless of whether those records have anything to do with Brazilian IPI tax payments or any associated tax credits.  (*See* Request Nos. 1-2, 10) And the subpoena also seeks 30(b)(6) deposition testimony concerning those same financial records and communications over many decades.  Applicant does not—and cannot—explain the relevance of these extremely broad document requests and deposition topics.

Nor are they consistent with the purpose of Section 1782, which is intended to provide narrow assistance to a foreign proceeding.  *See Promnefstroy*, 2009 WL 3335608, at *9–10.  Section 1782 relief typically is limited to "applications that seek either a single document or only those documents relating to a particular event." *Kreke*, 2013 WL 5966916, at *7.  Applicant should not be permitted to exploit Section 1782 to engage in a fishing expedition for commercially sensitive financial records and other information regarding GM's global operations spanning many decades.  *See, e.g.*, *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016) (finding that the fourth *Intel* factor weighs in respondent's favor where, as here, the subpoena "appears to be a broad 'fishing expedition' for irrelevant information"); *In re Intel Corp. Microprocessor Antitr.*

*Litig.*, 2008 WL 4861544, at *15 (finding that Section 1782 discovery "must be bounded by some temporal component").

Further, because Applicant seeks documents concerning Brazilian tax payments over many years, and decades-long legal proceedings in Brazil to determine the amount of any associated tax credit, many of the documents sought will be in Portuguese and require translation into English for review by U.S. lawyers and this Court. Some of the documents sought also are likely to be subject to privileges and other protections governed by Brazilian law, including data protection and privacy privileges. Should this Court grant Applicant's Section 1782 application, GM—with the assistance of Brazilian legal experts—would have to conduct a substantial and complex review of all documents prior to producing them to Applicant. Inevitably, there will be disputes between the parties concerning the application of Brazilian law privileges and other protections to certain documents. It is clearly more logical and more efficient for such Brazilian law disputes to be resolved by a Brazilian court familiar with these privileges and protections rather than a U.S. federal district court in Delaware.

Moreover, the sheer volume of time and resources required for such translation, document review and production in the United States would truly be an absurd result given that the documents would then immediately be returned to Brazil for use in a purported contemplated lawsuit in the Brazilian courts. *See Salcido-*

29

*Romo* v. *S. Copper Corp.*, 2016 WL 3213212, at *3 (D. Ariz. June 10, 2016)

(finding a similar request to be unduly burdensome); *Kreke*, 2013 WL 5966916, at

*7 (same).  Similarly, witnesses with key knowledge of the Brazilian tax payments

and any associated tax credits reside in Brazil, which means that GM would be

required to fly a Brazilian witness to the U.S. at an immense burden to both GM and

the witness in the midst of a global pandemic, or, alternatively, somehow educate a

Delaware resident with no personal knowledge using documents from Brazil.

There is no legitimate reason to impose these significant burdens, especially

considering that all of this discovery would be duplicative of the materials sought in

Brazil.  *See IPC Do Nordeste*, 2012 WL 4448886, at *9 (denying Section 1782

discovery because "[applicant] may be seeking the same evidence from Dow

Chemical in this Court and Dow Brasil in the Brazilian court, in which case the

discovery sought here is unreasonably cumulative or duplicative"); *In re Fischer

Advanced Composite Components AG*, No. C08-1512 (RSM), 2008 WL 5210839, at

*3 (W.D. Wa. 2008) ("[Applicant's] requests are unduly burdensome primarily

because [applicant] has failed to show why the information it seeks [from the

parent] could not equally be obtained by [the subsidiary party to the foreign

proceeding].").

The fourth *Intel* factor thus strongly weighs against granting the Application.

## III.   THE APPLICATION ALSO SHOULD BE DENIED BECAUSE IT DOES NOT COMPORT WITH THE FEDERAL RULES

Finally, the Application also should be denied because the proposed subpoena does not conform to the Federal Rules of Civil Procedure.  *See* 28 U.S.C. § 1782(a) (discovery shall be conducted "in accordance with the Federal Rules of Civil Procedure"); *Bayer AG* v. *Betachem, Inc.*, 173 F.3d 188, 192 (3d Cir. 1999) ("Section 1782 . . . incorporates by reference the scope of discovery permitted by the Federal Rules of Civil Procedure.").[1]

Rule 45(c)(1) states that a party serving a subpoena "must take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena."  As discussed above, the proposed subpoena is overly broad and unduly burdensome, especially because Applicant lacks standing to file an action seeking recovery of the credits.

Rule 45 also prevents Applicant from seeking information that is equally available from a party in the proceeding.  As discussed above, the information Applicant seeks is virtually identical to its requests of GM Brazil in the Brazilian case.  "When the information sought is equally available through the foreign proceeding from a party to that proceeding, such requests targeting a different

---

[1] Although GM highlights some of the deficiencies of the proposed subpoena under the Federal Rules of Civil Procedure insofar as they constitute grounds for denial of the Application, GM does so without waiver of its right to move to quash the subpoena on these or any other grounds should the Application be granted.

person in the United States are by their very nature unduly burdensome." *In re Judicial Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank Ltd.*, No. 2:14 Civ. 00797 (GMN) (NJK), 2015 WL 3439103, at *9 (D. Nev. May 28, 2015). That principle also precludes requests to parent corporations for documents in the possession of subsidiaries. *See, e.g., Kreke*, 2013 WL 5966916, at *5 (denying discovery sought from parent company under Section 1782 when subsidiary company was a participant in the foreign proceeding); *Fischer*, 2008 WL 5210839, at *3-5 (exercising discretion to deny discovery as unduly burdensome because it was available from the subsidiary as party to the foreign proceeding).

Rule 26(b)(2)(C) similarly provides that a court should not permit discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Applicant's discovery requests should be pursued in Brazil. As noted above, that is particularly the case because those requests will likely raise issues of privilege and data protection and privacy protection under Brazilian law. Those issues, we submit, should be handled in Brazil instead of in this Court, which would have to rely upon declarations of Brazilian lawyers.

## CONCLUSION

For the reasons set forth above, the Court should deny the Application in its entirety.

Dated:  March 28, 2022

Respectfully submitted,

PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP

By: */s/  Daniel A. Mason*
   Daniel A. Mason (#5206)
   500 Delaware Avenue, Suite 200
   Post Office Box 32
   Wilmington, DE 19899-0032
   (302) 655-4410 *phone*
   (302) 655-4420 *fax*
   Email:  dmason@paulweiss.com

Of Counsel:
Lewis R. Clayton
Darren W. Johnson
Paul, Weiss, Rifkind,
Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064

*Counsel for Respondent*
*General Motors Company*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this filing complies with the type, font, and word-count limitations set forth in the Court's Standing Order Regarding Briefing in All Cases of November 6, 2019, subject to the word-count extension afforded by the Amended Stipulation and Order to Extend Word-Count Limitation for Response to Application for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782. According to the word processing system used to prepare it, the foregoing document contains 7857 words, excluding the case caption, table of contents, table of authorities, and signature block. The text of this filing, including footnotes, was prepared in Times New Roman, 14 point font.

PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP

By: */s/ Daniel A. Mason*
   Daniel A. Mason (#5206)
   500 Delaware Avenue, Suite 200
   Post Office Box 32
   Wilmington, DE 19899-0032
   (302) 655-4410 *phone*
   (302) 655-4420 *fax*
   Email: dmason@paulweiss.com

## **CERTIFICATE OF SERVICE**

I hereby certify that, on March 28, 2022, a copy of the foregoing

Memorandum of Law was filed electronically.  Notice of this filing will be sent by

email to all parties by operation of the Court's electronic filing system.  Parties may

access this filing through the Court's CM/ECF System.


*/s/  Daniel A. Mason*
Daniel A. Mason (#5206)