IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>*EX PARTE* APPLICATION OF SPS CORP I – FUNDO DE INVESTIMENTO EM DIREITOS CREDITÓRIOS NÃO PADRONIZADOS FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782 | Case No. 1:21-mc-00565-CFC |

**RESPONDENT DELOITTE & TOUCHE LLP'S JOINDER IN OPPOSITION TO *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING**

Respondent Deloitte & Touche LLP ("D&T US") joins, and adopts, the memorandum of law of Respondent General Motors Company (the "GM Opposition") in opposing the *ex parte* application of SPS Corp I – Fundo de Investimento em Direitos Creditórios Não Padronizados ("SPS") for an order to conduct discovery pursuant to 28 U.S.C. § 1782. D&T US further states as follows:

**I.     Introduction**

As more fully set forth in the GM Opposition and below, SPS's application should be denied because SPS fails to satisfy the statutory requirements of Section 1782, which include, *inter alia*, that an applicant seek discovery from an entity that "resides or is found" in this district "for use in a proceeding in a foreign or

international tribunal." Neither of these statutory requirements are satisfied here. Further, even if the application complies with Section 1782, the Court should nonetheless exercise its discretion to deny the document and deposition discovery sought by SPS based on the factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). In particular, discovery should not be permitted due to the burden the discovery would impose on D&T US, a non-party to the Brazilian dispute that would possess no information regarding General Motors do Brasil LTDA ("GM Brazil") other than what it may have received from GM.[1] SPS's application for an order permitting discovery from D&T US should be denied.

## II. SPS's Application Fails to Satisfy the Requirements of Section 1782

Section 1782 requires, among other things, that the discovery sought be "for use" in a foreign proceeding. SPS's application fails that statutory requirement. SPS's own application admits that it cannot satisfy this requirement by stating that the discovery it seeks here is "for use" in a "*Contemplated* Proceeding" to enforce a potential right it may have against GM Brazil. Indeed, SPS admits that "it lacks the information it needs to file [the Contemplated Proceeding]." (SPS MOL, 9.) Courts have repeatedly confirmed that the "for use" requirement in Section 1782 is not satisfied where an applicant seeks "to investigate whether litigation is possible in the

---

[1] D&T US provided audit services to GM through February 2018, but never to GM Brazil. Thus, D&T US would not have received documents or information directly from GM Brazil.

2

first place." *In re Certain Funds, Accounts, and/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Group LLC*, 2014 WL 3404955, at *6 (S.D.N.Y. July 9, 2014). The purpose of Section 1782 is to facilitate discovery "for use" in a foreign proceeding, not to facilitate a "fishing expedition" in search of potential claims. *See In re Pioneer Corp. for an Order Permitting Issuance of Subpoenas to Take Discovery in a Foreign Proceeding*, 2018 WL 2146412, at *8 (C.D. Cal. May 9, 2018) ("This appears to be more of a fishing expedition for claims that [the applicant] may someday wish to bring against Thomson than a targeted search for materials in Technicolor's possession related to disputes at issue in the German proceedings.").

SPS's discovery efforts are duplicative, not additive, as SPS seeks the same information in the Brazilian Proceeding that it seeks from Respondents here. SPS describes the Brazilian Proceeding as having a "limited purpose," *i.e.*, "evidence production." (SPS MOL, 12.) Notably, as part of the Brazilian Proceeding, SPS has already requested to take discovery from Deloitte Touche Tohmatsu Auditores Independentes ("DTT Brazil"), a separate and distinct entity from D&T US.[2] (GM

---

[2] It is entirely unclear why SPS seeks documents and deposition testimony from D&T US when it already seeks the same documents and testimony from DTT Brazil. The Deloitte global network consists of "distinct member firms, which operate independently in their own countries and are subject to their own laws and professional practices." *In re: Application of Passport Special Opportunities Master Fund, LP for an Order Compelling Compliance with a Subpoena Issued to Deloitte Touche Tohmatsu Ltd. Pursuant to 28 U.S.C. § 1782*, 2016 WL 844833, at *5

Opp., 10-11.) SPS does not, and cannot, explain how the discovery it seeks here could possibly be "for use" in that proceeding. *In re Pioneer Corp. v. Technicolor, Inc.*, 2018 WL 4961911, at *7 (C.D. Cal. Sept. 12, 2018) ("[T]he discovery will not be deemed 'for use' in a foreign proceeding unless the applicant can introduce the information as evidence in that proceeding."); *In re Sargeant*, 278 F. Supp. 3d 814, 822 (S.D.N.Y. 2017) ("[T]his requirement focuses on the 'practical ability of an applicant to place a beneficial document—or the information it contains—before a foreign tribunal.'"). Instead, SPS admits that the discovery it seeks here would "put an end to the Brazilian Proceeding"—*i.e.*, due to mootness—thereby short circuiting the Brazilian court's authority to determine the proper scope of discovery under its own laws (without requiring SPS to actually "use" the documents in that proceeding). (SPS MOL, 14.)

SPS fails to satisfy the statutory requirements of Section 1782. The Court's analysis can end here, and the application should be denied.

### III. The *Intel* Factors Also Warrant Denial of the Application

To the extent the Court finds that the discovery sought by SPS is authorized by Section 1782 (which it should not), the Court should next consider the

---

(S.D.N.Y. Mar. 1, 2016). SPS "has not, for instance, pointed to a governance document or contract that gives [D&T US] 'the right to insist on access to [DTT Brazil's or] other members' documents.'" *Id.* (quoting *In re Nortel Networks Corp. Sec. Litig.*, 2004 WL 2149111, at *2 (S.D.N.Y. Sept. 23, 2004)).

4

discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). Those factors favor denial of the application. Under *Intel*, the Court will consider the following factors when determining whether to grant an application that satisfies the statutory requirements of Section 1782: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case, "the need for § 1782(a) aid generally is not as apparent;" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) whether the § 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the request is "unduly intrusive or burdensome." *Id.* at 264-65.

As discussed above, SPS's application seeks to "put an end to the Brazilian Proceeding" by obtaining discovery in circumvention of the Brazilian court's authority to determine the scope of discovery SPS is entitled to in connection with a Brazilian dispute. Based on these facts alone, the first, second, and third *Intel* factors favor denial of the application because (1) SPS is seeking identical discovery from GM Brazil and DTT Brazil in Brazil, (2) the foreign tribunal is currently considering the propriety of the discovery that SPS seeks under Brazilian law, and (3) SPS is attempting to circumvent the Brazilian court's authority by seeking discovery in the

U.S.  Indeed, SPS "fails to adequately explain why [Brazilian] processes governing discovery [are] not sufficient to . . . acquire the materials that it seeks through the Application."  *In re Pioneer Corp. v. Technicolor, Inc.*, 2018 WL 4961911, at *10 (C.D. Cal. Sept. 12, 2018).  The Court should deny SPS's application in light of its attempt to bypass the authority of the Brazilian court and, at a minimum, should stay any consideration of SPS's application until the Brazilian court rules on the parties' submissions in the Brazilian Proceeding.

*Finally*, the fourth *Intel* factor, particularly as applied to D&T US, favors denial of the application because the discovery that SPS seeks is "unduly intrusive or burdensome," *Intel*, 542 U.S. at 265, and exceeds the scope of discovery permitted under Rules 26 and 45 of "the Federal Rules of Civil Procedure which are incorporated by reference into 28 U.S.C. § 1782." [3]  *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 192 (3d Cir. 1999).  Here, SPS seeks *27 years* of financial statements and audit reports for GM and GM Brazil, as well as various categories of documents related to the IPI tax credits from *26-27 years ago*.  (*See* SPS MOL, Ex. A.)  SPS's requests are overbroad, duplicative, and not proportional to the needs of the Brazilian proceedings.  The requests also seek documents and information that are not within

---

[3] To the extent SPS is permitted to serve the subpoenas, D&T US reserves the right to object to the scope of the requests and deposition topics and/or move for a protective order under Rule 45.  *See In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016).

6

the possession, custody, or control of D&T US to the extent they seek documents and information concerning GM Brazil that were not provided to D&T US by GM. (*Supra*, n.2.)

Section 1782 requires that SPS make "a narrow request for documents designed to target materials that [it] would be able to use in the [Brazilian] Action[s]." *Technicolor*, 2018 WL 4961911, at *10 (C.D. Cal. Sept. 12, 2018). Here, even ignoring the fact that SPS fails to identify how it would "use" the documents it seeks in Brazil, the application fails to justify the scope of documents it seeks from D&T US. Indeed, SPS's requests would require D&T US to undertake a manual search of its records, which were maintained as hard files through 1999, digitize an unknown quantity of documents, and then have its attorneys review and prepare those documents for production (in addition to allowing GM to review those documents for privilege). This is a significant burden for a non-interested party, particularly considering that *SPS does not explain why D&T US would possess any unique documents or information that are not in the possession of GM or GM Brazil*.

Indeed, any documents or information that D&T US received regarding the IPI tax credits *would have been supplied by GM*. Importantly, D&T US did not create any financial statements for GM— D&T US's "responsibility [was] to express an opinion on the Company's financial statements," which were created, and then provided to D&T US, by "[GM]'s management." (*See* GM 2017 Form 10-K (filed

7

Feb. 6, 2018), at 45.)[4]  SPS cannot plausibly contend that the information it seeks from D&T US is not equally available through GM or GM Brazil, and therefore the application should be denied as to D&T US.  *In re Campuzano-Trevino*, 2022 WL 570254, at *7 (D. Md. Feb. 24, 2022) ("This Court agrees that [the respondent] should not be required to prepare a witness for deposition, or to search the files of its foreign subsidiary, where the requested discovery is available and presumably discoverable to [the applicant] . . . in Mexico."); *In re Jud. Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd.*, 2015 WL 3439103, at *9 (D. Nev. May 28, 2015) ("When the information sought is equally available through the foreign proceeding from a party to that proceeding, such requests targeting a different person in the United States are by their very nature unduly burdensome.").

Further, the breadth of the discovery that SPS seeks from D&T US is not proportional to the needs for which SPS purportedly seeks it—namely, to determine "(i) the exact amount of excess IPI collected by the Brazilian federal taxing authorities; and (ii) whether GM Brazil has already obtained refunds or credits for those excess IPI payments."  (SPS MOL, 12.)  Here, the "amount of excess IPI collected by the Brazilian federal taxing authorities" is not relevant to the Contemplated Proceeding (nor the Brazilian Proceeding) because, as SPS admits, it

---

[4] GM's 2017 Form 10-K is attached hereto as Exhibit 1.  "SEC filings . . . are matters of public record of which the court can take judicial notice."  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

is only entitled to payment for "the IPI overpayments that GM Brazil *recovered* or *received credits for*[.]" (SPS MOL, 4.) While SPS suggests that GM Brazil *could* have been accounting for the tax credits since 1991 (*id.* at 12 n.18), it admits that it has no evidence to support that theory (*id.* at 9). Indeed, as explained in the GM Opposition, Brazil's highest court did not even rule on GM Brazil's right to the tax credits until 2017 and GM Brazil did not submit a proof of claim to the Brazilian tax authorities until 2019 (GM Opp., 4)—*i.e.*, after D&T US stopped providing audit serves to GM (SPS MOL, 10).[5] There is thus no basis to drag D&T US into this discovery application—the proposed discovery would impose a significant burden and expense on D&T US, a non-party to the Brazilian proceedings, to produce broad discovery that is not relevant to, or is otherwise duplicative of documents and information SPS already seeks in, the Brazilian proceedings. *See* Fed. R. Civ. P. 26, 45.

Here, the discretionary *Intel* factors favor denial of the application, particularly in regard to D&T US.

---

[5] D&T US stopped providing services to GM after auditing GM's 2017 financial statements, which work was completed in February 2018. (*See* GM 2017 Form 10-K (filed Feb. 6, 2018).)

## IV. Conclusion

For the reasons set forth in GM's Opposition and above, SPS's application to issue document and deposition subpoenas to D&T US should be denied.

Dated: March 28, 2022                              MCDERMOTT WILL & EMERY LLP

/s/ *Ethan H. Townsend*
Ethan H. Townsend (#5813)
Daniel T. Menken (#6309)
The Nemours Building
1007 North Orange Street, 10th Floor
Wilmington, DE 19801
Tel.: (302) 485-3911
ehtownsend@mwe.com
dmenken@mwe.com

-and-

Timothy E. Hoeffner
MCDERMOTT WILL & EMERY LLP
One Vanderbilt Avenue
New York, NY 10017-3852
(212) 547-5595
thoeffner@mwe.com

*Attorneys for Respondent
Deloitte & Touche LLP*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that the foregoing document contains 2,217 words in 14-point Times New Roman font, inclusive of section headings and footnotes, which were counted using the word count feature of Microsoft Word. The word count does not include the case caption, document title, counsel signature blocks, or this certificate.

Dated: March 28, 2022                    /s/ *Ethan H. Townsend*
                                         Ethan H. Townsend (#5813)