IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re Letter of Request from SPS Corp I* | 21-mc-00565-CFC |

## MEMORANDUM ORDER

Pending before me is an application filed by SPS Corp I – Fundo de Investimento em Direitos Creditórios Não Padronizados (SPS) pursuant to 28 U.S.C. § 1782(a) for authorization to issue subpoenas to General Motors Company (GM) and GM's auditors, Deloitte & Touche LLP (Deloitte) and Ernst & Young LLP (E&Y) (D.I. 1). SPS seeks documents and depositions for use in pending discovery and contemplated merits proceedings in Brazil related to the recovery of certain tax overpayments from GM's Brazilian subsidiary, General Motors do Brazil LTDA (GM Brazil). D.I. 2 at 1, 9. GM opposes SPS's § 1782 application, D.I. 12, and Deloitte, D.I. 15 at 1, and E&Y, D.I. 16 at 1, join in GM's opposition.[1]

---

[1] Deloitte also asks that I deny SPS's subpoena because Deloitte possesses "no information regarding [GM Brazil] other than what [Deloitte] may have received from GM." D.I. 15 at 2. E&Y similarly explains that "SPS has failed to identify any relevant information in" or "uniquely in" E&Y's possession. D.I. 16 at 1. SPS does not mention Deloitte or E&Y in its Reply, much less respond to their arguments. D.I. 28. SPS states in its opening brief that Deloitte and E&Y were independent auditors of GM, D.I. 2 at 10, but it nowhere explains why E&Y or Deloitte would have relevant information that GM does not have. Accordingly, I

The parties largely agree on how this § 1782 application arose. In 1989, Brazil made a change to its tax code that lowered the taxes GM Brazil had to pay to the Brazilian government when it sold new cars to car dealerships. D.I. 2 at 3; D.I. 2-1, Ex. B ¶ 8; D.I. 13 ¶ 6. GM Brazil passed these taxes along to the dealerships. D.I. 2-1, Ex. B ¶ 10; D.I. 13 ¶ 6. But, for a period of time, Brazil failed to charge GM Brazil the new and lower tax rate; GM Brazil and, consequently, the dealerships, paid more than they owed. D.I. 2 at 3; D.I. 2-1, Ex. B ¶ 11; D.I. 13 ¶ 6. GM Brazil, with the consent of the dealerships, initiated a lawsuit to recover the tax overpayments. D.I. 2-1, Ex. B ¶ 11; D.I. 13 ¶ 7. Once the lawsuit and related administrative proceedings conclude, the parties agree that GM Brazil must remit at least some of the refunds it receives from the Brazilian government to the dealerships. D.I. 2-1, Ex. B ¶¶ 12–13; D.I. 13 ¶ 9. SPS says it acquired the rights to receive those refunds from 35 dealerships. D.I. 2-1, Ex. B ¶ 5. The parties appear to disagree about when GM Brazil must make these payments and whether GM Brazil has been forthcoming about certain information

---

will also deny as forfeited SPS's application with respect to Deloitte and E&Y. *See In re Seroquel XR Antitrust Litig.*, 2022 WL 2438934, at *18 (D. Del. July 5, 2022) (treating the moving party's "failure to address [a point nonmovant made] as implicitly conceding the point" where the moving party's initial treatment of the issue was conclusory).

necessary to determine the size of the reimbursements owed to the dealerships (and, by extension, to SPS). D.I. 2-1, Ex. B ¶¶ 12–14; D.I. 13 ¶¶ 9–10.

After SPS tried and failed to negotiate for additional information with GM Brazil directly, SPS initiated a discovery proceeding before the 18th Civil Court of the Central Court of the state of São Paulo. D.I. 2 at 5; D.I. 2-1, Ex. B ¶ 30. It is undisputed that the purpose of the discovery proceeding is for SPS to obtain documents from GM Brazil to determine what allegations SPS could properly bring in a future merits proceeding. *See* D.I. 2-1, Ex. B ¶¶ 25–26; D.I. 13 ¶ 14. In the São Paulo court, SPS seeks from GM Brazil the following materials related to the tax overpayments at issue: (1) internal documents related to their collection and calculation; (2) accounting records, audit reports, and related materials; (3) information about administrative proceedings; and (4) information about transfers of money between GM Brazil and car dealerships. D.I. 2-1 at 64–65. SPS secured an order from the São Paulo court for the discovery it seeks, and GM Brazil then challenged SPS's discovery demands. D.I. 2-1, Ex. B ¶ 36. SPS argues that GM Brazil's challenge was an improper effort to stonewall the discovery proceedings, D.I. 2-1, Ex. B ¶ 36; GM Brazil disputes that characterization, D.I. 13 ¶ 19.

SPS now turns to this § 1782 application to "put an end to" its ongoing discovery proceeding, D.I. 2 at 14, and to acquire the evidence needed to "assess its claim or indemnity against [GM Brazil] and ultimately to file its claim . . . in

3

Brazil against [GM Brazil,]" D.I. 2-1, Ex. B ¶ 40. SPS seeks information from GM and GM's auditors about how GM has treated the tax overpayments at issue in its financial statements and audit and accounting records. In particular, SPS seeks financial statements and audit reports from GM and GM Brazil from 1990 to 2021, as well as the following information related to the tax overpayments at issue: (1) internal documents and communications; (2) accounting records, audit reports, and related information; (3) information about administrative proceedings; and (4) information about transfers of money between GM, GM Brazil, and car dealerships. D.I. 2-1 at 9–11, 28–29, 46–47. It also seeks deposition testimony on the tax overpayments and their treatment by GM's accountants and auditors. D.I. 2-1 at 17–19, 35–37, 53–55. GM and its auditors oppose the application. D.I. 12; D.I. 15; D.I. 16.

A district court has the authority to grant an application under § 1782 when three statutory conditions are met: (1) the person from whom discovery is sought "resides or is found" within the district; (2) the discovery is "for use in a proceeding before a foreign or international tribunal"; and (3) the application is made by an "interested person." 28 U.S.C. § 1782(a); *see also In re Bayer AG*, 146 F.3d 188, 193 (3d Cir. 1998). *See generally ZF Auto. US, Inc. v. Luxshare, Ltd.*, 142 S. Ct. 2078, 2089 (2022) (defining "foreign or international tribunal").

4

If the statutory conditions are satisfied, the decision to grant a § 1782 application lies within the district court's discretion. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). The Court identified in *Intel* four factors relevant to that discretionary determination: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding" since such a person may possess evidence "unobtainable absent § 1782(a) aid"; (2) "the nature of the foreign tribunal," the "character" of the foreign proceedings, and "the receptivity" of the foreign court to federal "judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions"; and (4) whether the request is "unduly intrusive or burdensome." *Id.* at 264–65. "A court should apply these factors in support of § 1782's 'twin aims' of 'providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts.'" *In re Biomet Orthopaedics Switzerland GmBh*, 742 F. App'x 690, 696 (3d Cir. 2018) (quoting *Intel*, 542 U.S. at 252). The party opposing discovery has the burden to demonstrate any "'facts warranting the denial'" of an application. *In re Chevron Corp.*, 633 F.3d 153, 162 (3d Cir. 2011) (citation omitted).

Having considered and balanced the *Intel* factors and twin aims of § 1782(a), I will deny SPS's application. Since I would deny SPS's application under the

5

discretionary factors, I need not consider whether SPS's application meets § 1782(a)'s statutory requirements.

The first factor weighs in GM's favor because SPS admits it can obtain the evidence it seeks in the discovery proceeding. I agree with SPS that GM is not a participant in SPS's pending discovery proceeding before the São Paulo court. D.I. 28 at 6. But GM Brazil is a participant. D.I. 2-1, Ex. B ¶ 30–31. SPS admits that "all financial information concerning the [] tax refunds or credits [that GM Brazil owes to SPS are] in the possession of GM Brazil and its financial professionals." D.I. 2 at 4. And SPS's Brazilian attorney argues both that GM Brazil lacks a defense in the discovery proceeding and that the São Paulo court has not denied SPS's discovery request. D.I. 28, Ex. A ¶¶ 2–6. The Court noted in *Intel* that "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." 542 U.S. at 264 (citations omitted). Here, even if GM's financial statements include information about the tax overpayments at issue, D.I. 2 at 6, SPS can obtain the same information in the pending foreign court proceeding, *see* D.I. 28, Ex. A ¶ 32 (explaining that "documents that show whether and how GM Brazil has taken tax advantages of [the tax overpayments at issue]" are "requested [from] GM Brazil"

6

in Brazil and "are requested from different entities" in this Court). Since much of the evidence SPS demands is not "evidence . . . unobtainable absent § 1782(a) aid[,]" *Intel*, 542 U.S. at 264, the first *Intel* factor favors GM.

The second *Intel* factor instructs me to consider the "character" of the foreign proceeding and the receptivity of the foreign tribunal to the discovery SPS seeks. This factor also favors GM. SPS describes its pending proceeding as "a preliminary discovery lawsuit" and "a mechanism that allows litigants in Brazil to gather evidence against potential defendants . . . ." D.I. 2 at 5. Both respect for the São Paulo court and the goal of efficient litigation caution that I should wait until the pending discovery proceeding concludes. *Biomet Orthopaedics*, 742 F. App'x at 696 (quoting *Intel*, 542 U.S. at 252) (explaining that the "'twin aims'" of § 1782(a) are "'providing efficient assistance'" and "'encouraging . . . similar assistance'" from foreign countries). Otherwise, the São Paulo court may not be receptive to the discovery I order, or I may duplicate that tribunal's efforts. *See* D.I. 12 at 23 (arguing that the foreign court's receptivity to what SPS seeks here is speculative "[u]ntil the Brazilian court decides whether the discovery SPS seeks [there] is appropriate").

The Third *Intel* factor—whether SPS "attempt[s] to circumvent foreign proof-gathering restrictions"—is neutral, at least for now. 542 U.S. at 265. The substantial overlap between the information SPS now seeks from GM and already

7

sought from GM Brazil leaves SPS in a bind: If SPS overcomes GM Brazil's challenge to its discovery demands in the São Paulo court, D.I. 2-1, Ex. B ¶ 36, SPS's request to GM before me would largely duplicate the discovery it receives from GM Brazil; as a result, the first *Intel* factor would weigh further against SPS. But, if the São Paulo court rules in favor of GM Brazil, any discovery I provide would likely "circumvent foreign proof-gathering restrictions[,]" *Intel*, 542 U.S. at 265, because "the foreign tribunal has already rejected requests for the same documents[,]" *In re Ex Parte Application of Eni S.p.A.*, 2021 WL 1063390, at *4 (D. Del. Mar. 19, 2021) (citing *Chevron Corp.*, 633 F.3d at 163). *But see Intel*, 542 U.S. at 260 (finding no "blanket foreign-discoverability rule" for § 1782(a) assistance). SPS asserts that the São Paulo court has not rejected its discovery requests. D.I. 28 at 2. For now, I will accept SPS's assertion and find this factor neutral.

With respect to the final factor, I assume without deciding that the request is not unduly burdensome and therefore this factor favors SPS. Some of SPS's document requests seek information far beyond the scope of this narrow dispute about tax overpayments. *See* D.I. 2-1 at 11 ("All documents and communications concerning audit reports and related documents . . . ."), 29 (same), 47 (same). But I may be able strike those requests, narrow the subpoenas, and eliminate the undue burden.

8

Thus, the balance of the *Intel* factors favors GM. Moreover, the aims of § 1782 would not be served by granting the application. SPS seeks to "put an end to" its ongoing discovery proceeding, D.I. 2 at 14, but that is not § 1782(a)'s role. Section 1782(a) helps parties obtain discovery in the United States, where foreign tribunals lack jurisdiction. *See Intel*, 542 U.S. at 264 (noting that evidence from "nonparticipants in foreign proceedings . . . may be unobtainable absent § 1782(a) aid"). SPS admits that it seeks largely the same information here and before the São Paulo court. *See* D.I. 2 at 4. And a comparison of what SPS seeks here, D.I. 2-1 at 9–11 (seeking, e.g., audit reports, accounting records, and information about administrative proceedings related to the tax overpayments at issue), and there, D.I. 2-1 at 65 (seeking, e.g., audit reports, accounting records, and information about administrative proceedings related to the same tax overpayments), bolsters that conclusion.

NOW THEREFORE, for these reasons, IT IS HEREBY ORDERED that SPS's Application for an Order Under 28 U.S.C. § 1782 Permitting SPS to Issue a Subpoena for the Taking of a Deposition and the Production of Documents from GM, Deloitte and E&Y (D.I. 1) is **DENIED**.

_____
CHIEF JUDGE